IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| CAROLYN HAGG, | : |
| Plaintiff, | : CIVIL ACTION NO.: 23-132J |
| v. | : |
| ZIMMER BIOMET APEX SURGICAL, LLC; AARON GATTEN; and DEREK FOX, | : |
| Defendants. | : **JURY TRIAL DEMANDED** |

## COMPLAINT

### NATURE OF THE CASE

1. Plaintiff, Carolyn Hagg, brings this action against her former employer Zimmer Biomet Apex Surgical, LLC ("ZBAS") , and two of its officers, or employees, Aaron Gatten and Derek Fox for sex discrimination in employment, an unlawful and retaliatory discharge, and unequal pay in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §§ 2000e *et seq.*; the Equal Pay Act of 1963 ("EPA"), 29 U.S.C. § 206(d); the Pennsylvania Equal Pay Law ("PEPL"), 43 P.S. § 336.3(a); and, the Pennsylvania Human Relations Act ("PHRA"), 43 P.S. § 951.

2. Defendants created a hostile work environment based on Plaintiff's sex, paid Plaintiff a salary lower than her male counterparts were paid for the same or similar work, and

ultimately terminated Plaintiff because of her sex, and in retaliation for complaining about being treated less favorably than similarly situated male employees.

## PARTIES

3. Plaintiff is an adult female individual who currently resides in Hollidaysburg, Pennsylvania.

4. Plaintiff was at all times relevant hereto an employee of ZBAS.

5. ZBAS is a limited liability company based in Hudson Ohio, which is engaged in business in Ohio and Pennsylvania and elsewhere as a regional distributor of Zimmer Biomet orthopedic products, including products and devices used in total knee, hip, shoulder, foot, ankle and other joint reconstruction treatment of injuries due to trauma and sports.

6. Defendant Aaron Gatten is an adult male who resides in the Pittsburgh area. He is and was at all times relevant hereto employed by ZBAS as a Distributor Principal.

7. Defendant Derek Fox is an adult male who is and was at all times relevant hereto employed by ZBAS as a Distributor Principal.

8. Plaintiff believes and avers that Gatten and Fox are officers, members and/or controlling persons as to ZBAS.

## JURISDICTION AND VENUE

9. Plaintiff incorporates the foregoing paragraphs as though they were set forth at length herein.

10. Subject matter jurisdiction for Plaintiff's federal claims is proper under 28 U.S.C. § 1331, and the Court maintains supplemental jurisdiction over Plaintiff's state law claims under 28 U.S.C. § 1367.

11.     Venue is proper before the United States District Court for the Western District of Pennsylvania under 28 U.S.C. § 1391 as a substantial part of the events and omissions giving rise to Plaintiff's claims occurred in the Western District of Pennsylvania.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

12.     Plaintiff timely filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC"), which was cross-filed with the Pennsylvania Human Rights Commission. Her Charge has been closed, and by letter dated April 6, 2023, she received a Notice of Right to Sue.

## FACTUAL ALLEGATIONS

13.     In 2013 Plaintiff began working for Zimmer, Inc. ("Zimmer"), a manufacturer of orthopedic parts and devices. In June 2015, Zimmer acquired Biomet, Inc., ultimately forming ZBAS in or around October 2015. In connection with the formation of ZBAS, Plaintiff's employment was transferred from Zimmer to ZBAS. Plaintiff remained an employee of ZBAS until the termination of her employment as more fully described hereinafter.

14.     Throughout her employment Plaintiff was in a marketing and sales role, and for most of her employment was a specialist in the marketing and sale of Zimmer sports medicine and biologics.

15.     In April 2016, Plaintiff was promoted to Vice President of Sales. In that role, she reported to Gatten and Fox.

16.     ZBAS is divided into four (4) geographical sales regions. Each region has its own Vice President of Sales and teams of sales representatives. There are approximately one hundred

(100) employees in the ZBAS sales division, of whom the maximum number of females at any given time was eight (8) females.

17. As a Vice President of Sales, Plaintiff was responsible for a region encompassing a geographic area extending from Indiana to Union Counties in Pennsylvania.

18. The Vice Presidents of Sales responsible for the other three regions were all males. Daniel Eggerton ("Eggerton") was responsible for the region from Pittsburgh, PA to the south including Washington County, PA and northern West Virginia. Paul Persic ("Persic") was responsible for the area north of Pittsburgh which includes Youngstown, OH and Erie, PA. Kurt Kleve ("Kleve") was responsible for all areas in northeastern Ohio.

19. An additional Vice President of Sales, Frank Cantazaro ("Cantazaro"), also a male, was responsible for trauma and foot and ankle for all four sales regions serviced by ZBAS.

20. Plaintiff performed the same or substantially similar work to the work performed by Eggerton, Persic, Kleve and Cantazaro.

21. All Vice Presidents of Sales, including Plaintiff, were responsible for overseeing teams of one (1) to ten (10) sales representatives. Plaintiff oversaw five (5) teams.

22. The day-to-day responsibilities for a Vice President of Sales consisted of meeting with clients and potential clients, supervising and facilitating the sales of Zimmer Biomet products, hospital contracting and attending surgeries where Zimmer Biomet products were used.

23. Plaintiff was at all times a salaried employee. At the beginning of her employment by ZBAS she earned an annual salary of $86,000.00. When she was promoted to Vice President of Sales at ZBAS in April 2016, her annual salary was increased to $100,000.00. In 2019 her

annual salary increased minimally to approximately $103,000.00 and remained at that amount until her termination in September 2021.

24. Upon information and belief, Plaintiff avers that Eggerton, Persic, Kleve and Cantazaro were paid substantially more than she, receiving annual salaries well above $150,000.00, and may also have been paid additional sums in the form of bonuses.

25. Plaintiff typically worked five (5) to seven (7) days a week. She typically spent three (3) to four (4) days traveling on the road and otherwise worked from her home office.

26. ZBAS maintained two offices located in Hudson, Ohio and Pittsburgh, Pennsylvania. Plaintiff was rarely, if ever, invited to the ZBAS offices. By contrast males employed by ZBAS, including Eggerton, Persic and Cantazaro, were frequently invited to the offices. When Plaintiff requested the opportunity to meet Gatten and/or Fox she was repeatedly rebutted based on pretexts. Plaintiff believes and avers that she was excluded from meetings at the ZBAS offices because of an animus on the part of Defendants against her because of her gender.

27. In fact, Plaintiff was also purposely excluded by Defendants from multiple company dinners and activities in the Pittsburgh area. When she complained about being excluded, Gatten told her that she lived too far away, and the company did not want her to make the drive. Plaintiff believes and avers that Gatten's assertions were utterly pretextual, and she was excluded because she is female. Female employees attended such events.

28. Plaintiff was also forbidden to call Gatten directly. Instead, Plaintiff was to text or email him to schedule a time to talk with him or email him with any thoughts or issues. By contrast, Plaintiff's male counterparts, however, were freely permitted to call Gatten directly. Plaintiff

believes and avers that the prohibition on direct calls to Gatten was motivated by Defendants' gender-based animus.

29. On the few occasions during her employment that she actually spoke to Gatten by telephone, he was abrupt, uncooperative, unhelpful and falsely told her he had no time to talk. By contrast, Gatten frequently spoke to male Vice Presidents, personally and by telephone at great length, and he was cooperative, helpful, pleasant, and treated them in a dramatically different manner than the curt manner in which he treated Plaintiff. Gatten's differential treatment of Plaintiff was motivated by a persistent gender-based animus.

30. In January 2016, Plaintiff, the other Vice Presidents of Sales, Gatten, Fox, and multiple male sales representatives were at an annual Zimmer Biomet national sales meeting in Indianapolis, IN. Because of a snowstorm, return flights to the Pittsburgh area were cancelled. Gatten drove to the conference from the Pittsburgh area and, in light of the storm, decided to leave early. He was taking some people back with him that lived in Pittsburgh and surrounding areas. When Plaintiff asked Gatten to ride with the others, he refused, whereupon as to why, despite there being room for another in the car, Plaintiff was ultimately required to rent a car and drove home alone. Plaintiff believes and avers that her exclusion from the ride was due to Gatten's gender-based animus.

31. During the 2016 American Academy of Orthopedic Surgeons ("AAOS") annual conference in San Diego, CA, Zimmer Biomet hosted a dinner for orthopedic surgeons, which Plaintiff attended. After the dinner, Plaintiff, Gatten, Fox and a group of male sales representatives went to the "Gaslamp Quarter", presumably to enjoy nightlife. Plaintiff was excluded from that activity because she is female.

32. On a myriad of occasions, Plaintiff was purposefully excluded by Defendants from industry conferences and conventions always attended by male counterparts. The following are illustrative examples:

    a. In December 2016, Gatten and Fox sent an email invitation to the 2017 AAOS annual conference to all male Vice Presidents of Sales and other male sales employees. Plaintiff was purposefully excluded from the email. Plaintiff complained, whereupon Defendants responded with the false pretext that there were insufficient hotel rooms and passes. In fact, Plaintiff was excluded because of her gender.

    b. In December 2018, Gatten and Fox sent an email invitation to the 2019 AAOS annual conference via email to all male Vice Presidents of Sales and other male sales representatives. Plaintiff was again excluded. When Plaintiff complained, Gatten and Fox created the similar false pretext about insufficient hotel rooms and passes. In fact, Plaintiff was excluded because she is female.

    c. In December 2019, Gatten and Fox sent an email invitation to the 2020 AAOS annual conference to all male Vice Presidents of Sales and several other male sales representatives. Plaintiff was again excluded. Plaintiff complained, whereupon Defendants again falsely told her there were insufficient hotel rooms and passes. Despite the pretext, Plaintiff insisted that she be permitted to attend the conference, and that ZBAS provide her with a hotel room and a pass the same as all other male attendees. After much discussion, Gatten and Fox finally agreed, although the conference was cancelled because of the COVID pandemic. Plaintiff believes and avers that the Defendants' conduct was motivated by a persistent animus toward her because she is female.

33. On multiple occasions, Gatten informed Plaintiff verbally that, simply because she is female, she, unlike other male sales employees, should not "interact with orthopedic surgeons".

34. Gatten stated "Females do not have the ability to sell to male orthopedic surgeons."

35. Gatten has also stated that in the orthopedic products industry his opinion is that: "a male Vice President of Sales or male sales representative can sell better than a female".

36. Gatten's statements as aforesaid demonstrate a deeply held animus toward female sales persons.

37. During a ZBAS December 2019 holiday party held at a restaurant in downtown Pittsburgh, Gatten asked Plaintiff if there were any other positions, other than Vice President of Sales, that she would be interested in, because he would help her get the job. Gatten's inquiry was motivated by his animus toward female sales persons in the orthopedic products industry.

38. In January 2021, Plaintiff had a telephone call with Gatten and Fox during which she was admonished for ostensibly lower sales production during 2020, despite that sales were plainly negatively impacted by the COVID-19 pandemic. By contrast, Vice Presidents of Sales whose sales were also affected were not similarly admonished.

39. In her sales territory, Gatten and Fox did not provide sales support and assistance to Plaintiff on the same basis as they did with respect to other Vice Presidents. For example, they rarely engaged with orthopedic surgeon clients in Plaintiff's sales territory in comparison with those in the other three sales regions.

40. For example, during the summer of 2021, Plaintiff set up a meeting with Gatten and an important orthopedic surgeon to be held in DuBois, PA. After multiple postponements and

cancellations, Gatten declined to attend. By contrast, Gatten frequently met with surgeons to support the sales efforts of other male sales representatives.

41. Gatten and Fox regularly attended meetings with Plaintiff's male counterparts and their respective sales teams. By contrast, they rarely interacted with Plaintiff and her sales representatives.

42. Gatten and Fox did meet on one occasion with Plaintiff's sales team that covered the State College area; they did so because the team lead and another sales representative knew Gatten and Fox from playing football together at Pennsylvania State University. Plaintiff was excluded; she was never invited to, nor was she informed of, those meetings because she is female.

43. A dinner was scheduled by Defendants in or about late August 2021 for surgeons in Plaintiff's sales region. The dinner was hosted by Eggerton (the Vice President of Sales assigned to the Pittsburgh area and areas south) and a sales representative who reported to Plaintiff. Plaintiff was excluded from this dinner.

44. Defendants' conduct in relation to differential sales and marketing support as aforesaid was a consequence of a discriminatory attitude toward Plaintiff because of her gender.

45. On September 10, 2021, Plaintiff received a telephone call from David Hillyer ("Hillyer"), the CFO of ZBAS, informing her that Gatten and Fox had decided to terminate her employment. Plaintiff was given no reason for the termination. When she emailed Gatten and Fox to inquire as to why she had been terminated, they made no response.

46. Plaintiff was terminated from her employment with ZBAS because she is female, and in retaliation for repeated complaints she had made about discriminatory treatment by the Defendants.

## COUNT ONE

## Sex Discrimination in Violation of Title VII

47. Plaintiff incorporates the foregoing paragraphs1 through 46 as though they were set forth at length herein.

48. Defendants are "employers" as defined by Title VII at 42 U.S.C. § 2000e(b).

49. Plaintiff is an "employee" as defined by Title VII at 42 U.S.C. § 2000e(f).

50. Plaintiff is a member of a class protected by Title VII.

51. Plaintiff is and at all relevant times hereto was qualified to perform her job functions.

52. Defendants subjected Plaintiff to unlawful discrimination in violation of Title VII, as more fully set forth hereinabove.

53. The termination of Plaintiff is motivated by a discriminatory animus toward Plaintiff because of her gender.

54. Additionally, the conduct of Defendants resulted in the creation of a hostile work environment based on Plaintiff's sex in violation of 42 U.S.C. § 2000e-2.

55. As a direct and proximate result of Defendants' discriminatory actions, Plaintiff has suffered economic harm, emotional distress, mental anguish, and loss of reputation.

56. Defendants' actions were willful, wanton, malicious, reckless and intentional, and thus warrant the imposition of punitive damages.

WHEREFORE, Plaintiff Carolyn Hagg hereby demands judgment for compensatory damages, punitive damages, attorneys' fees and costs, and such other relief as is appropriate under Title VII.

## COUNT TWO

### Retaliation in Violation of Title VII

57. Plaintiff incorporates the foregoing paragraphs 1 through 56 as though they were set forth at length herein.

58. Plaintiff engaged in conduct protected under Title VII by making complaints regarding gender-based disparate treatment.

59. As a direct and proximate result of Plaintiff's protected complaints, Defendants terminated Plaintiff's employment in violation of Title VII.

60. As a direct and proximate result of Defendants' retaliation, Plaintiff has suffered economic harm, emotional distress, mental anguish, and loss of reputation.

61. Defendants' actions were willful, wanton, malicious, reckless and intentional, and thus warrant the imposition of punitive damages.

WHEREFORE, Plaintiff Carolyn Hagg hereby demands judgment for compensatory and punitive damages, and such other relief as is appropriate for retaliatory discharge.

## COUNT THREE

### Unequal Pay in Violation of the EPA and the PEPL

62. Plaintiff incorporates the foregoing paragraphs 1 through 61 as though they were set forth at length herein.

63. Defendants are "employers" subject to the EPA and the PEPL within the meaning of 29 U.S.C. § 203(d) and 43 P.S. § 336.2(b).

64. Plaintiff is an "employee" as defined by 29 U.S.C. § 203(e)(2) and 43 P.S. § 336.2(a).

65. Plaintiff is female.

66. Plaintiff's comparators, Eggerton, Persic, Kleve and Cantazaro, are male.

67. Plaintiff performed work which required at least an equal, if not higher, degree of skill, effort, and responsibilities, and was performed under similar working conditions, as her male counterparts.

68. Defendants' payment of unequal compensation to Plaintiff was not pursuant to a seniority system, merit system, a system which measures earnings by quantity or quality of production, or any factor other than sex.

69. Defendants discriminated against Plaintiff by paying her less compensation for the same or similar work than male counterparts because of her sex.

70. Defendants' actions were willful, knowing, wanton, malicious, reckless and intentional, and thus warrant the imposition of liquidated damages.

WHEREFORE, Plaintiff Carolyn Hagg hereby demands judgment for damages, liquidated damages, equitable relief, attorneys' fees and costs, and such other relief as is appropriate.

## COUNT FOUR

### Retaliation in Violation of the EPA

71. Plaintiff incorporates the foregoing paragraphs 1 through 70 as though they were set forth at length herein.

72. Pursuant to 29 U.S.C. § 215(a)(3) of the Fair Labor Standards Act of 1938 ("FLSA"), 29 U.S.C. §§ 201, *et seq.*, it is unlawful for any person: "to discharge or in any other manner discriminate against any employee because such employee has filed any complaint or instituted or cause to be instituted any proceeding under or related to [the FLSA], or has testified

or is about to testify in any such proceeding, or has served or is about to serve on an industry committee."

73. The FLSA's anti-retaliation provision is applicable to retaliation claims under the EPA.

74. Plaintiff engaged in activity protected under the EPA, in that she made complaints to Defendants about the disparity in her pay.

75. Defendants failed to adequately or properly address Plaintiff's complaints about the disparity in her pay.

76. Defendants, through its agents and employees, subjected Plaintiff to an ongoing pattern of retaliation as a direct and proximate result of her protected activity.

77. The retaliatory actions described herein are and were materially adverse.

78. As a direct and proximate result of Defendants' retaliation, Plaintiff has suffered economic harm, emotional distress, mental anguish, and loss of reputation.

79. Defendants' actions were willful, wanton, malicious, reckless and intentional, and thus warrant the imposition of punitive damages.

WHEREFORE, Plaintiff Carolyn Hagg hereby demands judgment for compensatory damages, punitive damages, equitable relief, attorneys' fees and costs, and such other relief as the Court deems appropriate.

Date: <u>June 22, 2023</u>                                    By: _____
                                                              Avrum Levicoff, Esquire
                                                              Pa. I.D. #: 26044
                                                              The Levicoff Law Firm, P.C.
                                                              4 PPG Place, Suite 200
                                                              Pittsburgh, PA 15222-3911
                                                              (412) 434-5200

                                                              *Counsel for Plaintiff*